1   PAUL ALAN LEVY, *pro hac vice* pending
    Email: plevy@citizen.org
2   Public Citizen Litigation Group
    1600 20th Street, NW
3   Washington, DC  20009
    Telephone: 202/588-1000
4   Facsimile:  202/588-7795

5   ANN BRICK (No. 65296)
    American Civil Liberties Union Foundation
6   of Northern California, Inc.
    Email: abrick@aclunc.org
7   39 Drumm Street
    San Francisco, California  94111
8   Telephone: 415/621-2493
    Facsimile:  415/255-8437

9
    Attorneys for Movant
10
                    UNITED STATES DISTRICT COURT
11          FOR THE NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
12
    PARKMERCED INVESTORS PROPERTIES      )    No. CV-0800434-MEJ
13  LLC, *et al.,*                       )
                                         )    **MOTION FOR PROTECTIVE**
14                Plaintiffs,            )    **ORDER AND TO STRIKE AND**
                                         )    **SUPPORTING MEMORANDUM**
15                                       )    **OF POINTS AND AUTHORITIES**
                  v.                     )    Fed R. Civ. P. 26(c), C.C.P. § 425.16
16  DOES 1-18, INCLUSIVE                 )
                                         )    Date:   January 15, 2009
17                Defendants.            )    Time:   10 AM
                                         )    Place:  Courtroom B, 15th floor
18                                       )    Judge:  James

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

3  NOTICE OF PROPOSED MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5      A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B. Proceedings to Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
6

7  SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8  I.      THE SUBPOENA SHOULD BE QUASHED BECAUSE IT WAS SERVED
        BEFORE THE TIME PERMITTED FOR COMMENCING DISCOVERY. . . . . . . . . . . 8

9  II.     THE FIRST AMENDMENT BARS THE DISCOVERY SOUGHT. . . . . . . . . . . . . . . . 8

10  A.    The First Amendment Protects Against the Compelled Identification of
       Anonymous Internet Speakers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11  B.    The Qualified Privilege for Anonymous Speech Supports a Five-Part Standard
12        for the Identification of John Doe Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13  C.    Plaintiffs Have Not Followed The Steps Required Before Identification of John
       Doe Speakers May Be Ordered in This Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14             1.      Require Notice of the Threat to Anonymity and an Opportunity
15                   to Defend It . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16             2.      Demand Specificity Concerning the Statements . . . . . . . . . . . . . . . . . . . 16

17             3.      Review the Facial Validity of the Complaint After the Statements
18                   Are Specified . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19             4.      Require an Evidentiary Basis for the Claims . . . . . . . . . . . . . . . . . . . . . . 19

           5.      Balance the Equities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
20

21  III.   THE STATE-LAW COUNTS IN THE COMPLAINT SHOULD BE STRICKEN
       UNDER THE SLAPP STATUTE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

22  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

23

24

25

26

27

28

-ii-

1

**TABLE OF AUTHORITIES**

2  **CASES**

3  *Alvis  Coatings v. Doe,*
    2004 WL 2904405 (W.D.N.C. Dec. 2, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

*Anti-Monopoly v. General Mills Fun Group,*
5      611 F.2d 296 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6  *Asay v. Hallmark Cards,*
    594 F.2d 692 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7

*Bates v. City of Little Rock,*
8      361 U.S. 516 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9  *Best Western Int'l v. Doe,*
    2006 WL 2091695  (D. Ariz. July 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10

*Blatty v. New York Times Co.,*
11      42 Cal. 3d 1033 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12  *Braun v. Chronicle Publishing Co.,*
    52 Cal. App. 4th 1036 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

13

*Bruno v. Stillman,*
14      633 F.2d 583 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15  *Buckley v. American Constitutional Law Foundation,*
    525 U.S. 182 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

*Carey v. Hume,*
17      492 F.2d 631 (D.C. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18  *Carver v. Bonds,*
    135 Cal. App. 4th 328 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19

*Cervantes v. Time,*
20      464 F.2d 986 (8th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

21  *Columbia Insurance Co. v. Seescandy.com,*
    185 F.R.D. 573 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

22

*Damon v. Ocean Hills Journalism Club,*
23      85 Cal. App. 4th 468 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

24  *Dendrite v. Doe,*
    775 A.2d 756 (N.J. Super. App. Div. 2001) . . . . . . . . . . . . . . . . . . . 11, 12, 13, 15, 22

25

*Doe v. 2theMart.com,*
26      140 F. Supp. 2d 1088 (W.D.Wash. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

27

28

-iii-

*Doe v. Cahill,*
    884 A.2d 451 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*In re Does 1-10,*
    242 S.W.3d 805 (Tex.App.-Texarkana 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dowling v. Zimmerman,*
    85 Cal. App. 4th 1400 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ealy v. Littlejohn,*
    560 F.2d 219 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Elrod v. Burns,*
    427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*FEC v. Florida for Kennedy Committee,*
    681 F.2d 1281 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Global Telemedia International v. Doe 1,*
    132 F. Supp. 2d 1261 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Highfields Capital Management v. Doe,*
    385 F. Supp. 2d 969 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 22

*Hustler Magazine v. Falwell,*
    485 U.S. 46 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Baxter,*
    2001 WL 34806203 (W.D. La. Dec. 20, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jack Russell Terrier Network v. American Kennel Club,*
    407 F.3d 1027 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kids Against Pollution v. California Dental Association,*
    108 Cal. App. 4th 1003 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Krinsky v. Doe 6,*
    159 Cal. App. 4th 1154 ( 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 21

*L.S. Heath & Son v. AT&T Information System,*
    9 F.3d 561 (7th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lee v. Department of Justice,*
    413 F.3d 53 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ludwig v. Superior Court*
    37 Cal. App. 4th 8 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

-iv-

*McIntyre v. Ohio Elections Committee,*
    514 U.S. 334 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*McMann v. Doe,*
    460 F. Supp. 2d 259 (D. Mass. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Melvin v. Doe,*
    49 Pa. D. & C. 4th 449 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Melvin v. Doe,*
    836 A.2d 42 (Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Miami Herald Public Co. v. Tornillo,*
    418 U.S. 241 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Miller v. Transamerican Press,*
    621 F.2d 721 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Missouri ex rel. Classic III v. Ely,*
    954 S.W.2d 650 (Mo.App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Mobilisa v. Doe,*
    170 P.3d 712 (Ariz. App. Div. 1 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22

*NAACP v. Alabama,*
    357 U.S. 449 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Navellier v. Sletten,*
    29 Cal. 4th 82 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Oja v. Army Corps of Engineers,*
    440 F.3d 1122 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Original Appalachian Artworks v. Toy Loft,*
    684 F.2d 821 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Petroleum Prod. Antitrust Litigation,*
    680 F.2d 5 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Procter & Gamble Co. v. Amway Corp.,*
    242 F.3d 539 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rancho Publications v. Superior Court,*
    68 Cal. App. 4th 1538 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reno v. ACLU,*
    521 U.S. 844 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Richards of Rockford v. PGE,*
    71 F.R.D. 388 (N.D. Cal. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-v-

*Rocker Mgmt. v. Does,*
    2003 WL 22149380 (N.D. Cal. May 29, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shelley v. Kraemer,*
    334 U.S. 1 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shoen v. Shoen,*
    5 F.3d 1289 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Silicon Knights v. Crystal Dynamics,*
    983 F. Supp. 1303 (N.D.Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Chanel, Inc.,*
    402 F.2d 562 (9th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sony Music Entertainment v. Does 1-40,*
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Southwell v. Southern Poverty Law Center,*
    949 F. Supp. 1303 (W.D. Mich. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Stanfield v. Osborne Industrial,*
    52 F.3d 867 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*1-800-Contacts v. Steinberg,*
    107 Cal. App. 4th 568 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Swiger v. Allegheny Energy,*
    2007 WL 442383 (E.D. Pa., Feb. 7, 2007),
    *aff'd* 540 F.3d 179 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Talley v. California,*
    362 U.S. 60 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tuchscher Development Enterprises v. San Diego Unified Port District,*
    106 Cal. App. 4th 1219 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Lockheed Missiles & Space Co.,*
    171 F.3d 1208 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Watchtower Bible & Tract Society of New York v. Village of Stratton,*
    536 U.S. 150 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Zerilli v. Smith,*
    656 F.2d 705 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**CONSTITUTION, STATUTES AND RULES**

United States Constitution, First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

-vi-

Lanham Act
    15 U.S.C. §§ 1051 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

    Section 43(a), 15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7
    Section 43(a)(1), 15 U.S.C. § 1125(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18
    Section 43(a)(2), 15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

California Code of Civil Procedure

    Section 340(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Section 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Section 425.16(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    Section 425.16(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Federal Rules of Civil Procedure

    Rule 26(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    Rule 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7, 8

**MISCELLANEOUS**

Eisenhofer & Liebesman, *Caught by the Net,*
    10 Business Law Today No. 1 (Sept./Oct.2000) . . . . . . . . . . . . . . . . . . . . . . . . . 20

Furman, *Cybersmear or Cyberslapp: Analyzing Defamation Suits Against Online John
Does as Strategic Lawsuits Against Public Participation,*
    25 Seattle U.L.Rev. 213 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lessig, *The Law of the Horse,*
    113 Harv. L. Rev. 501, 504-505 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lidsky & Cotter, *Authorship, Audiences and Anonymous Speech,*
    82 Notre Dame L. Rev.1537 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

O'Brien, *Putting a Face to a Screen Name: The First Amendment Implications of Compelling
ISP's to Reveal the Identities of Anonymous Internet Speakers in Online Defamation Cases,*
    70 Fordham L. Rev. 2745 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Reder & O'Brien, *Corporate Cybersmear: Employers File John Doe Defamation Lawsuits
Seeking the Identity of Anonymous Employee Internet Posters,*
    8 Mich.Telecomm. & Tech. L. Rev. 195 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Spencer, *Cyberslapp Suits and John Doe Subpoenas: Balancing Anonymity and
Accountability in Cyberspace,*
    19 J. Marshall J. Computer & Info. L. 493 (2001) . . . . . . . . . . . . . . . . . . . . . . . 12

Thompson, *On the Net, in the Dark,*
    California Law Week, Volume 1, No. 9 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Werthammer, *RNN Sues Yahoo Over Negative Web Site,*
    Daily Freeman, November 21, 2000, www.zwire.com/site/news.cfm?
    newsid=1098427&BRD=1769&PAG =461& dept_id= 4969&rfi=8 . . . . . . . . . . . . . . 20

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that, on Thursday, January 15, at 10 AM, or as soon thereafter as the matter may be heard by this Court, located at 450 Golden Gate Avenue, San Francisco, California, John Doe will and hereby moves the Court,, pursuant to Rule 26 of the Federal Rules of Civil Procedure, for a protective order barring the enforcement of plaintiffs' subpoena to ApartmentRatings.com seeking to identify anonymous Internet posters.  The subpoena, which is Exhibit A to the Levy Affidavit, seeks information subject to the qualified privilege to speak anonymously  Doe also moves under section 425.16 of the California Code of Civil Procedure to strike the complaint on which that subpoena is predicated because it is addressed to the exercise of the right of free speech in connection with a public issue and plaintiffs have not and cannot show a probability that they will prevail on their claims.

This motion seeks the following relief — a protective order quashing the plaintiffs' subpoena to identify persons criticizing the plaintiffs on the ApartmentRatings.com message boards, and striking the state-law claims.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND SPECIAL MOTION TO STRIKE**

This case involves tenants who posted comments about their apartment buildings on an online ratings forum, ApartmentRatings.com.  Without showing any basis to believe that they have claims within federal court jurisdiction, and without permission to conduct discovery before the Rule 26(f) conference, plaintiffs issued a subpoena to the host of the rating site, seeking to identify several anonymous speakers.  Under well-established law, courts do not order identification of anonymous Internet speakers, even when the speakers are named as defendants in a lawsuit, unless plaintiffs can show good reason to believe that the suit has a reasonable probability of success and thus that the need for disclosure outweighs the First Amendment right to speak anonymously.  Doe is therefore entitled to a protective order barring enforcement of the subpoena.  Indeed, as we show in the course of our argument, the Court lacks subject matter jurisdiction, and the state law counts in the complaint should be stricken as a SLAPP (Strategic Lawsuit Against Public Participation).

-1-

**STATEMENT OF THE CASE**

**A.  Factual Background**

1.  The Internet is a democratic institution in the fullest sense.  It serves as the modern equivalent of Speakers' Corner in London's Hyde Park, where ordinary people may voice their opinions, however silly, profane, or brilliant, to all who choose to read them.  As the Supreme Court explained in *Reno v. ACLU,* 521 U.S. 844, 853, 870 (1997), "From the publisher's point of view, [the Internet] constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers. . . . Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox.  Through the use of Web pages, . . . the same individual can become a pamphleteer."  The Court held, therefore, that full First Amendment protection applies to speech on the Internet.  *Id.*

Knowing that people have personal interests in news developments, and that people love to share their views with anyone who will listen, many companies have organized outlets for the expression of opinions.  Yahoo!, for example, has messages boards about every publicly traded company, and Google hosts Blogspot, where members of the public may create their own blogs and invite comment from the world, and YouTube, which allows the public to post their own videos and to comment on others' videos.  ApartmentRatings.com is a message board that invites discussion about residential apartment buildings in various locations throughout the United States.

Those who post messages generally do so under pseudonyms – similar to the old system of truck drivers using "handles" when they speak on their CB's.  Nothing prevents posters from using real names, but, as inspection of the message board at issue in this case will reveal, most people choose nicknames.  These monikers protect the writer's identity from those who disagree with him or her, and they encourage the uninhibited exchange of ideas and opinions.  Indeed, every message board has regular posters who persistently complain about companies or individuals under discussion, others who persistently praise them, and others whose opinions vary between praise and criticism.  Such exchanges are often very heated, and they are sometimes filled with invective and insult.  Most, if not everything, that is said on message boards is taken with a grain of salt.

-2-

Many message boards have a significant feature that makes them very different from almost any other form of published expression. Subject to requirements of registration and moderation, any member of the public can use a message board to express his point of view; a person who disagrees with something that is said on a message board for any reason – including the belief that a statement contains false or misleading information – can respond to those statements immediately at no cost, and that response can have the same prominence as the offending message. A message board is thus unlike a newspaper, which at best selects criticisms that it publishes, and often refuses to publish any contrary views. *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974). By contrast, on most message boards companies can reply immediately to criticisms, giving facts or opinions to vindicate their positions, and thus, possibly, persuading the audience that they are right and their critics are wrong. Because many people regularly revisit message boards about a particular topic, a response is likely to be seen by much the same audience as those who saw the original criticism; hence the response reaches many, if not all, of the original readers. In this way, the Internet is an ideal proving ground for the proposition that the marketplace of ideas, rather than the courtroom, provides the best forum for the resolution of disagreements about the truth of disputed propositions of fact and opinion.

2. Plaintiffs Parkmerced Investors Properties LLC and Stellar Larkspur Partners LLC are Delaware limited liability companies that own properties in San Francisco and Larkspur, California, which include, respectively, more than 3000 and more than 300 residential units. Since 2001, comments have been posted on ApartmentRatings.com about these two properties, addressing such issues as construction noise, the degree of upkeep of their buildings, rising rents and other expenses, as well rapacious management companies. Levy Affidavit ¶¶ 4-5, Exhibits B, C. The comments range from the very positive to the very negative.

Movant Doe is a current tenant at Larkspur. *See* Levy Affidavit ¶ 7 and Exhibit E. In response to a statement posted about a construction project that had begun at the Larkspur apartment complex, which allegedly was producing unpleasant noise, one tenant posted a

comment stating that utility bills had not gone up very far, and movant John Doe posted the following comment on January 22, 2008, using the moniker "Anonymous"[1/]:

> Yes, darling, they did. If you look at your first double bill it represents 55 days. Do the math. In our case, our water/trash bill was $37-42/month. It is now $65/month; either prorate your double bill or look at the new single monthly bill; although many residents haven't even received it yet.

*See* Exhibit A, attached to Levy Affidavit.

It is this posting that is the basis for the subpoena seeking movant's identity.

So far as appears on ApartmentRatings.com, plaintiffs made no effort to explain these increases.  Indeed, although the web site gives apartment managers an opportunity to respond to comments about their properties, *id.* Exhibit D, there do not appear to be any responses posted from the managers of either of plaintiffs' properties.

**B. Proceedings to Date**

On September 23, 2008, plaintiffs filed this action, claiming that false and misleading statements had been made about them on ApartmentRatings.com.  The complaint enumerates eighteen different posts, which are quoted in the complaint, that were posted by "one or more Defendants," and that are allegedly false and misleading.  Complaint ¶¶ 12-24, 26-30.  The complaint further alleges that the defendants "either knew that the statements were false or misleading, or were reckless and indifferent as to whether they were false and misleading." *Id.* The posting by movant Doe was not among the allegedly actionable posts that were quoted in the complaint.  In addition to these quoted statements, the complaint alleges more generally that "defendants may also be responsible for posting or publishing additional false, misleading and defamatory statements that are currently unknown to Plaintiffs." *Id.* ¶¶ 23, 31.

Plaintiffs do not claim diversity, but rather assert that they are bringing a Lanham Act claim under section 43(a) of the Lanham Act.  Plaintiffs allege, solely on information and belief, that

> Defendants include employees, agents or representatives of competing residential apartment communities in the Bay Area, parties or their agents adverse to the

---

[1/] As undersigned counsel generally do in defending Doe cases, defendant Doe is identified here generically by female pronouns without any implication of her actual gender.

-4-

1    Apartments in other proceedings, other persons who are not current or former
     tenants of the Apartments, and/or persons misrepresenting their identities.

2        *Id.* ¶ 11.

3    Plaintiffs allege that the actionable postings constitute "false or misleading descriptions of fact and

4    false or misleading representations of fact under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."

5    *Id.* ¶ 33.  Additional counts allege state law claims for interference with contract  and libel, which

6    are allegedly within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7        Without waiting for the Rule 26(f) conference, and without filing any motion for leave to

8    take discovery before the Rule 26(f) conference, plaintiffs issued a subpoena dated October 3,

9    2008, demanding that ApartmentRatings.com produce documents identifying the users responsible

10   for posting several comments, including but not limited to the eighteen comments that were quoted

11   in the complaint.  Exhibit A.  Pursuant to its standard procedure, ApartmentRatings.com attempted

12   to notify its customers about the attempt to obtain their identities, and identified for undersigned

13   counsel the specific post for which Doe's identity is sought.  *Id.* Undersigned counsel conferred

14   with Terence Ross, Esquire, counsel for plaintiffs, and asked him to withdraw the subpoena and

15   dismiss the complaint to avoid the need for this motion for a protective order and to strike.  Levy

16   Aff. ¶ 8.  Because Mr. Ross declined to do so, *id.*, Doe now seeks a protective order and moves to

17   strike the state-law claims under the anti-SLAPP statute, Cal. Code Civ. P. § 425.16.

18                                    **SUMMARY OF ARGUMENT**

19       The Internet has the potential to be an equalizing force within our democracy, giving

20   ordinary citizens the opportunity to communicate, at minimal cost, their views on issues of public

21   concern to all who will listen.  Full First Amendment protection applies to communications on the

22   Internet, and longstanding precedent recognizes that speakers have a First Amendment right to

23   communicate anonymously, so long as they do not violate the law in doing so.  Thus, when a

24   complaint is brought against an anonymous speaker, the courts must balance the right to obtain

25   redress from the perpetrators of civil wrongs against the right of those who have done no wrong to

26   remain anonymous.  In cases such as this one, these rights come into conflict when a plaintiff

27

28
                                             -5-

seeks an order compelling disclosure of a speaker's identity, which, if successful, would irreparably destroy the defendant's First Amendment right to remain anonymous.

Suits against anonymous speakers are unlike most tort cases, where identifying an unknown defendant at the outset of the case is merely the first step toward establishing liability for damages. In a suit against an anonymous speaker, identifying the speaker gives an important measure of relief to the plaintiff because it enables it to employ extra-judicial self-help measures to counteract both the speech and the speaker, and creates a substantial risk of harm to the speaker, who not only loses the right to speak anonymously, but may be exposed to efforts to restrain or oppose her speech. For example, an employer might discharge a whistleblower, a public official might use his powers to retaliate against the speaker, and a landlord might evict a complaining tenant and decline to provide a positive reference. Similar cases across the country, and advice openly given by lawyers to potential clients, demonstrate that access to identifying information to enable extrajudicial action may be the only reason for many such lawsuits.

Whatever the reason for speaking anonymously, a rule that makes it too easy to remove the cloak of anonymity will deprive the marketplace of ideas of valuable contributions. Moreover, our legal system ordinarily does not give substantial relief of this sort, even on a preliminary basis, absent proof that the relief is justified because success is likely and the balance of hardships favors the relief. The challenge for the courts is to develop a test for the identification of anonymous speakers that makes it neither too easy for deliberate defamers to hide behind pseudonyms, nor too easy for a big company or a public figure to unmask critics simply by filing a complaint that manages, under liberal pleading standards, to state a claim for relief under some tort or contract theory.

This Court should embrace the developing consensus among courts that have considered this question – including federal and state courts in California – by relying on the general rule that only a compelling interest is sufficient to warrant infringement of the free speech right to remain anonymous. Specifically, when faced with a demand for discovery to identify an anonymous speaker, a court should (1) provide notice to the potential defendant and an opportunity to defend her anonymity; (2) require the plaintiff to specify the statements that allegedly violate her rights;

-6-

1   (3) review the complaint to ensure that it states a cause of action based on each statement and

2   against each defendant; (4) require the plaintiff to produce evidence supporting each element of

3   her claims; and (5) balance the equities, weighing the potential harm to the plaintiff from being

4   unable to proceed against the harm to the defendant from losing her right to remain anonymous, in

5   light of the strength of the plaintiff's evidence of wrongdoing.  The court thus ensures that

6   plaintiffs do not obtain important relief – identifying anonymous critics – and that defendants are

7   not denied important First Amendment rights, unless plaintiffs have a realistic chance of success

    on the merits.

8        Meeting these criteria can require time and effort on plaintiffs' part and may delay their

9   quest for redress.  However, everything that plaintiffs must do to meet this test, they must also do

10  to prevail on the merits.  So long as the test does not demand more information than plaintiffs

11  would be reasonably able to provide shortly after filing the complaint, the standard does not

12  unfairly prevent plaintiffs with legitimate grievances from achieving redress against anonymous

13  speakers.

14       Moreover, most cases of this kind primarily involve demands for monetary relief.  Only in

15  the rare case will a plaintiff have a sound argument for being granted a preliminary injunction,

16  given the nearly insurmountable rule against prior restraints of speech.  Accordingly, although

17  applying this standard may delay service of the complaint, it will not ordinarily prejudice the

18  plaintiff.  On the other hand, because, once the defendant is identified, her right to speak

19  anonymously has been irretrievably lost; this fact counsels in favor of caution and hence in favor

20  of allowing sufficient time for the defendant to respond and requiring a sufficient showing on the

21  part of the plaintiff.

22       Here, plaintiffs come into federal court hoping that some of the complaining posters may

23  turn out to be agents of competitors, thus justifying suit based on a Lanham Act theory, but this

24  Court's discovery powers should not be invoked based simply on hope that the facts may establish

25  subject matter jurisdiction.  Here, in violation of the Federal Rules of Civil Procedure, plaintiffs

26  issued a subpoena without waiting for the Rule 26(f) conference and without seeking leave of

27  Court.  Nor have plaintiffs presented the **evidence** of wrongdoing that the Court would have

28

                                          -7-

required before granting leave to take such discovery. Accordingly, the Court should grant a protective order against enforcement of the subpoena and should also grant the special motion to strike the complaint.

## I. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT WAS SERVED BEFORE THE TIME PERMITTED FOR COMMENCING DISCOVERY.

The subpoena should be quashed as premature. Rule 26(d) of the Federal Rules of Civil Procedure prohibits discovery "from any source before the parties have conferred as required by Rule 26(f)." Plaintiffs may argue that they cannot confer until they have identified the parties, but the Rules provide for that circumstance by allowing discovery "when authorized . . . by Court order." But plaintiffs did not seek leave of Court. If they choose to seek such leave, the standards articulated in the remaining pages of this brief should be applied to deny such leave unless and until plaintiffs are able to make a proper showing of a legal and factual basis for discovery.

## II. THE FIRST AMENDMENT BARS THE DISCOVERY SOUGHT.

### A. The First Amendment Protects Against the Compelled Identification of Anonymous Internet Speakers.

The First Amendment protects the right to speak anonymously. *Watchtower Bible & Tract Soc. of New York v. Village of Stratton*, 536 U.S. 150, 166-167 (2002); *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 199-200 (1999); *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995); *Talley v. California*, 362 U.S. 60 (1960); *Rancho Publications v. Superior Court*, 68 Cal. App.4th 1538, 1545, 1547, 1549 (1999). These cases celebrate the important role played by anonymous or pseudonymous writings over the course of history, from Shakespeare and Mark Twain to the authors of the Federalist Papers. The Supreme Court has stated:

> [A]n author is generally free to decide whether or not to disclose his or her true identity. The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible. Whatever the motivation may be, . . . the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry. Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.
>
> * * *

-8-

1
2

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent.

3

*McIntyre*, 514 U.S. at 341-342, 356.

4
5
6
7
8
9
10

These rights are fully applicable to speech on the Internet.  The Internet is a public forum of preeminent importance because it places in the hands of any individual who wants to express his views the opportunity to reach other members of the public who are hundreds or even thousands of miles away, at virtually no cost.  *Reno v. ACLU*, 521 U.S. 844, 853, 870 (1997).  Several courts have specifically upheld the right to communicate anonymously over the Internet.  *Highfields Capital Mgmt. v. Doe*, 385 F. Supp.2d 969 (N.D. Cal. 2005); *Krinsky v. Doe 6*, 159 Cal. App.4th 1154 (2008); *Doe v. Cahill,* 884 A.2d 451 (Del. 2005); *Melvin v. Doe*, 836 A.2d 42 (Pa. 2003).

11
12
13
14
15
16
17
18
19
20
21

Internet speakers choose to speak anonymously for many reasons.   They may wish to avoid having their views stereotyped according to their racial, ethnic or class characteristics, or their gender.  They may be associated with an organization but want to express an opinion of their own, without running the risk that, despite the standard disclaimer against attribution of opinions to the group, readers will assume that the group feels the same way.  They may want to say or imply things about themselves that they are unwilling to disclose otherwise.  And they may wish to say things that might make other people angry and stir a desire for retaliation.  Whatever the reason for wanting to speak anonymously, the impact of a rule that makes it too easy to remove the cloak of anonymity is to deprive the marketplace of ideas of valuable contributions, and potentially to bring unnecessary harm to the speakers themselves.

22
23
24
25
26
27
28

Moreover, at the same time that the Internet gives individuals the opportunity to speak anonymously, it creates an unparalleled capacity to monitor every speaker and to discover his or her identity.  The technology of the Internet is such that any speaker who sends an e-mail or visits a website leaves behind an electronic footprint that, if saved by the recipient, provides the beginning of a path that can be followed back to the original sender.  *See* Lessig, *The Law of the Horse*, 113 Harv. L. Rev. 501, 504-505 (1999).  Thus,

-9-

anybody with enough time, resources and interest, if coupled with the power to compel the disclosure of the information, can learn who is saying what to whom.

A court order, even when issued at the behest of a private party, constitutes state action and hence is subject to constitutional limitations. *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1 (1948). The Supreme Court has held that a court order to compel production of individuals' identities in a situation that would threaten the exercise of fundamental rights "is subject to the closest scrutiny." *NAACP v. Alabama*, 357 U.S. 449, 461 (1958); *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960). Abridgement of the rights to speech and press, "even though unintended, may inevitably follow from varied forms of governmental action," such as compelling the production of names. *NAACP v. Alabama*, 357 U.S. at 461. First Amendment rights may also be curtailed by private retribution following such court-ordered disclosures. *Id*. at 462-463; *Bates*, 361 U.S. at 524. As the Supreme Court has held, due process requires the showing of a "subordinating interest which is compelling" where, as here, compelled disclosure threatens a significant impairment of fundamental rights. *Bates*, 361 U.S. at 524; *NAACP v. Alabama*, 357 U.S. at 463. Because compelled identification trenches on the First Amendment right of anonymous speakers to remain anonymous, justification for an incursion on that right requires proof of a compelling interest, and beyond that, the restriction must be narrowly tailored to serve that interest. *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 347 (1995).

The courts have recognized the serious chilling effect that subpoenas to reveal the names of anonymous speakers can have on dissenters and the First Amendment interests that are implicated by such subpoenas. *E.g.*, *FEC v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284-1285 (11th Cir. 1982); *Ealy v. Littlejohn*, 560 F.2d 219, 226-230 (5th Cir. 1978). In a closely analogous area of law, the courts have evolved a standard for the compelled disclosure of the sources of libelous speech, recognizing a qualified privilege against disclosure of such otherwise anonymous sources. In those cases, courts apply a three-part test, under which the person seeking to identify the anonymous speaker has the

-10-

burden of showing that (1) the issue on which the material is sought is not just relevant to the action, but goes to the heart of his case; (2) disclosure of the source to prove the issue is "necessary" because the party seeking disclosure is likely to prevail on all the other issues in the case; and (3) the discovering party has exhausted all other means of proving this part of his case. *Lee v. Department of Justice*, 413 F.3d 53, 60 (D.C. Cir. 2005); *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993); *Miller v. Transamerican Press*, 621 F.2d 721, 726 (5th Cir. 1980); *Carey v. Hume,* 492 F.2d 631 (D.C. Cir. 1974); *Cervantes v. Time,* 464 F.2d 986 (8th Cir. 1972).

As one court stated, "If Internet users could be stripped of that anonymity by a civil subpoena enforced under the liberal rules of civil discovery, this would have a significant chilling effect on Internet communications and thus on basic First Amendment rights." *Doe v. 2theMart.com*, 140 F. Supp.2d 1088, 1093 (W.D. Wash. 2001).

**B.      The Qualified Privilege for Anonymous Speech Supports a Five-Part Standard for the Identification of John Doe Defendants.**

In a number of recent cases, courts have drawn on the privilege against revealing sources in civil cases to enunciate a similar standard for protecting against the identification of anonymous Internet speakers.

The leading case is *Dendrite v. Doe*, 775 A.2d 756 (N.J. Super. App. Div. 2001), where a company sued four people who had written about it on a bulletin board maintained by Yahoo!.  That court enunciated a five-part standard for cases involving subpoenas to identify anonymous Internet speakers, which we urge the Court to apply in this case:

> We offer the following guidelines to trial courts when faced with an application by a plaintiff for expedited discovery seeking an order compelling an ISP to honor a subpoena and disclose the identity of anonymous Internet posters who are sued for allegedly violating the rights of individuals, corporations or businesses. The trial court must consider and decide those applications by striking a balance between the well-established First Amendment right to speak anonymously, and the right of the plaintiff to protect its proprietary interests and reputation through the assertion of recognizable claims based on the actionable conduct of the anonymous, fictitiously-named defendants.

-11-

We hold that when such an application is made, the trial court should first require the plaintiff to undertake efforts to notify the anonymous posters that they are the subject of a subpoena or application for an order of disclosure, and withhold action to afford the fictitiously-named defendants a reasonable opportunity to file and serve opposition to the application. These notification efforts should include posting a message of notification of the identity discovery request to the anonymous user on the ISP's pertinent message board.

The court shall also require the plaintiff to identify and set forth the exact statements purportedly made by each anonymous poster that plaintiff alleges constitutes actionable speech.

The complaint and all information provided to the court should be carefully reviewed to determine whether plaintiff has set forth a prima facie cause of action against the fictitiously-named anonymous defendants. In addition to establishing that its action can withstand a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to [New Jersey's rules], the plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant.

Finally, assuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed.

The application of these procedures and standards must be undertaken and analyzed on a case-by-case basis. The guiding principle is a result based on a meaningful analysis and a proper balancing of the equities and rights at issue.

*Dendrite v. Doe*, 775 A.2d at 760-761.[2]

A somewhat less exacting standard requires the submission of evidence to support plaintiffs' claims, but not an explicit balancing of interests if the evidence is otherwise sufficient to support discovery. *Doe v. Cahill,* 884 A.2d 451 (Del. 2005).

---

[2]     *Dendrite* has received a favorable reception among commentators.  *E.g.*, Lidsky & Cotter, *Authorship, Audiences and Anonymous Speech,* 82 Notre Dame L. Rev. 1537 (2007); O'Brien, *Putting a Face to a Screen Name: The First Amendment Implications of Compelling ISP's to Reveal the Identities of Anonymous Internet Speakers in Online Defamation Cases*, 70 Fordham L. Rev. 2745 (2002); Reder & O'Brien, *Corporate Cybersmear: Employers File John Doe Defamation Lawsuits Seeking the Identity of Anonymous Employee Internet Posters*, 8 Mich. Telecomm. & Tech. L. Rev. 195 (2001); Furman, *Cybersmear or Cyberslapp: Analyzing Defamation Suits Against Online John Does as Strategic Lawsuits Against Public Participation*, 25 Seattle U.L. Rev. 213 (2001); Spencer, *Cyberslapp Suits and John Doe Subpoenas: Balancing Anonymity and Accountability in Cyberspace*, 19 J. Marshall J. Computer & Info. L. 493 (2001).

-12-

All of the other appellate courts that have addressed the issue of subpoenas to identify anonymous Internet speakers, as well as several federal district courts, have adopted some variant of the *Dendrite* or *Cahill* standards.  Several courts have expressly endorsed the *Dendrite* test, requiring notice and opportunity to respond, legally valid claims, evidence supporting those claims, and finally an explicit balancing of the reasons supporting disclosure and the reasons supporting continued anonymity.  In *Highfields Capital Mgmt. v. Doe*, 385 F. Supp.2d 969, 976 (N.D. Cal. 2005), Judge Brazil required an evidentiary showing followed by express balancing of "the magnitude of the harms that would be caused to the competing interests," and held that plaintiff's trademark and defamation claims based on sardonic postings about plaintiff's chief executive did not support discovery.  *Mobilisa v. Doe*, 170 P.3d 712 (Ariz. App. Div. 1  2007), involved a subpoena by a private company seeking to identify the sender of an anonymous email message who had allegedly hacked into the company's computers to obtain information that was conveyed in the message.  Directly following the *Dendrite* decision, and disagreeing with the Delaware Supreme Court's rejection of the balancing stage, the court drew an analogy between an order requiring identification of an anonymous speaker and a preliminary injunction against speech, and called for plaintiff to present evidence sufficient to defeat a motion for summary judgment, followed by a balancing of the equities between the two sides.  *In re Baxter*, 2001 WL 34806203 (W.D. La. Dec. 20, 2001), similarly expressed a preference for the *Dendrite* approach, requiring a showing of reasonable possibility or probability of success.

Several courts have followed a *Cahill*-like standard, including the California Court of Appeal in *Krinsky v. Doe 6*, 159 Cal. App.4th 1154 (2008), which reversed a trial court decision allowing an executive to identify several online critics who allegedly defamed her by such references as "a management consisting of boobs, losers and crooks."  *Accord In re Does 1-10*, 242 S.W.3d 805 (Tex. App.-Texarkana 2007); *Melvin v. Doe*, 49 Pa. D&C 4th 449 (2000), *rev'd on other grounds*, 575 Pa. 264, 836 A.2d 42 (2003) (trial court ordered disclosure only after finding genuine issues of material fact requiring trial;

-13-

Pennsylvania Supreme Court expressly recognized the right to speak anonymously and sent the case back to address need to prove actual economic harm under Pennsylvania law).  Among the federal decisions following *Cahill* are *Best Western Int'l v. Doe*, 2006 WL 2091695 (D. Ariz. July 25, 2006) (court said it would follow a five-factor test drawn from *Cahill*, *Dendrite* and other cases); *Sony Music Entertainment v. Does 1-40*, 326 F. Supp.2d 556 (S.D.N.Y. 2004); *Alvis Coatings v. Doe*, 2004 WL 2904405 (W.D.N.C. Dec. 2, 2004); *McMann v. Doe*, 460 F. Supp.2d 259 (D. Mass. 2006*)*.

A similar approach was used in *Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999), where the plaintiff sued several defendants for registering Internet domain names that used the plaintiff's trademark.  The court expressed concern about the possible chilling effect of such discovery (*id.* at 578):

> People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law.  This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate . . . .  People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identities.

Accordingly, the court required the plaintiff to make a good faith effort to communicate with the anonymous defendants and give them notice that suit had been filed against them, thus providing them an opportunity to defend their anonymity.  The court also compelled the plaintiff to demonstrate that it had viable claims against the defendants.  *Id.* at 579.  This demonstration included a review of the evidence in support of the plaintiff's trademark claims against the anonymous defendants.  *Id.* at 580.  *Cf. Rocker Mgmt. v. Does*, 2003 WL 22149380 (N.D. Cal. May 29, 2003) (following *Seescandy*, examining "totality of the circumstances" in ruling that it need go no further than to determine that the posts were opinion, not fact).

Although many of these cases set out slightly different standards, each weighs the plaintiff's interest in obtaining the name of a person that has allegedly violated its rights against the interests implicated by the potential violation of the First Amendment right to

-14-

anonymity, thus ensuring that First Amendment rights are not trammeled unnecessarily. Put another way, the qualified privilege to speak anonymously requires courts to review a would-be plaintiff's claims and the evidence supporting them to ensure that the plaintiff has a valid reason for piercing the speaker's anonymity.

### C.    Plaintiffs Have Not Followed the Steps Required Before Identification of John Doe Speakers May Be Ordered in This Case.

Courts should follow five steps in deciding whether to allow plaintiffs to compel the identification of anonymous Internet speakers.  Because plaintiffs have not met these standards, they are not entitled to have their subpoena enforced.

### (1)    Require Notice of the Threat to Anonymity and an Opportunity to Defend It

When a court receives a request for permission to subpoena an anonymous Internet poster, it should require the **plaintiff** to notify the posters that they are the subject of a subpoena, and then withhold action for a reasonable period of time until the defendant has had time to retain counsel.  *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. at 579.  In *Dendrite*, the trial judge required the plaintiff to post on the message board a notice of application for discovery to identify anonymous critics.  The notice identified the four screen names that were sought to be identified and provided information about the local bar referral service so that the individuals concerned could retain counsel to voice their objections, if any.  The Appellate Division specifically approved this requirement. 342 N.J.Super. at 141, 775 A.2d at 760.

Here, plaintiffs did nothing to notify the Does of the quest to identify them. Although ApartmentRatings.com sent email notice to its customers, review of the message boards reveals that some Does may have registered to post as long ago as 2001, and email addresses often change; thus there is no reason to be confident that all of the Does have received the email notification intended for them. The Court should require posting on the relevant message boards – and perhaps also posting of notices at the apartment buildings

-15-

in question – to ensure that all of the defendants have a fair opportunity to defend their right to remain anonymous.

### (2)      Demand Specificity Concerning the Statements

The qualified privilege to speak anonymously requires a court to review the plaintiff's claims to ensure that he does, in fact, have a valid reason for piercing each speaker's anonymity.  Thus, the court should require the plaintiff to set forth the exact statements by each anonymous speaker that are alleged to have violated his rights.  Indeed, many states, and many federal courts, require that defamatory words be set forth verbatim in a complaint for defamation.  *Asay v. Hallmark Cards*, 594 F.2d 692, 699 (8th Cir. 1979).  *See also Silicon Knights v. Crystal Dynamics,* 983 F. Supp. 1303 (N.D. Cal. 1997); *Gilbert v. Sykes*, 147 Cal. App.4th 13, 32 (2007) (allegedly defamatory words "must be specifically identified, if not pleaded verbatim, in the complaint").

Here, plaintiffs have enumerated eighteen specific statements in their complaint. In addition, they have complained about other unspecified, possibly defamatory statements. Complaint ¶¶ 25, 31.  The subpoena seeks to identify at least some anonymous speakers, including movant, whose statements were not specified in the complaint. Movant was able to identify the post that resulted in notification of the subpoena from ApartmentRatings.com only by inquiring of ApartmentRatings.com, which provided a copy of the subpoena and identified the comment with which Doe's account was associated.  It is possible that movant's post may not even be an intended target of the subpoena, which seeks "the posting [singular] on or about January 22, 2008" in response to an earlier posting.  Exh. A. ¶ 2(b).  The complaint, ¶ 27, sets forth verbatim a different responsive post bearing that date, not Doe's response of the same date.  Thus, movant's situation simply illustrates the need to require that the exact statements at issue be identified, that permission to take discovery be sought, and that careful consideration be given to what discovery to allow, if any.  Plaintiffs have not satisfied this part of the test either.

-16-

(3)     **Review the Facial Validity of the Complaint After the Statements Are Specified**

Third, the court should review the complaint to ensure that it states viable claims against each defendant.  In this case, the complaint must be dismissed for several different reasons, some going to issues of jurisdiction and some to the merits of plaintiffs' claims.

Plaintiff allege that this Court has jurisdiction under the Lanham Act, but their Lanham Act allegations are deficient in several ways.  They allege on "information and belief" that defendants "include" employees agents or representatives of competing residential apartment communities, and they purport to allege violations of section 43(a) of the Lanham Act in that defendants' statements allegedly constitute "false or misleading descriptions of fact."

The Court should make no mistake about what is at stake here: If this sort of vague allegation is sufficient to confer federal question jurisdiction, then any defamation claim could be filed in federal court regardless of whether there is diversity and regardless of whether the jurisdictional amount was satisfied.  However, a plaintiff should not be entitled to bring a defamation claim in federal court merely by asserting, without any apparent basis, that some its critics may represent other commercial companies.

Moreover, a false description of fact is not actionable under section 43(a) unless it either is made about a trademarked name and is **either** likely to cause confusion about the source of the goods or services in question, section 43(a)(1), *Smith v. Chanel, Inc.*, 402 F.2d 562 (9th Cir. 1968), **or** is made in "commercial advertising or promotion." Section 43(a)(2).  *Newcal Industries v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008). Plaintiffs make none of the required allegations here, hence their Lanham Act claim cannot be the basis for federal jurisdiction.

On reviewing the complaint, undersigned counsel had assumed that the reference to "competing residential apartment communities," ¶ 11, meant that plaintiffs intended to bring a false advertising claim, but that claim is not properly pleaded for two reasons. First, there is no allegation that the comments are "commercial advertising or promotion."

-17-

Second, to bring a false advertising claim, there must be an allegation (and eventually proof) that the reason for making the statements is to sell rival goods or services, and not simply to criticize the plaintiff. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 552-553 (5th Cir. 2001). In counsel's meet and confer, plaintiffs' counsel insisted that the complaint was intended to assert an infringement claim, Levy Aff. ¶ 8, but the "essential element" of any infringement claim under the Lanham Act is "that the alleged infringement by the defendant creates a likelihood of confusion on the part of consumers as to the source of the goods." *Original Appalachian Artworks v. Toy Loft,* 684 F.2d 821, 831 (11th Cir. 1982). *See also Anti-Monopoly v. General Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979) ("It is the source denoting function which trademark laws protect, and nothing more"). Plaintiffs do not even allege that they have trademark rights in the names, not to speak of alleging that there is an actionable likelihood of confusion under section 43(a)(1). Indeed, plaintiffs could not credibly allege that any Internet user would visit the comment pages about Parkmerced or Larkspur Shores and believe that the highly critical comments on which plaintiffs have sued here were posted by the plaintiffs.

Plaintiffs' defamation claims are also problematic. First, expressions of opinion are not actionable for defamation, and the issue of whether a statement is opinion or fact is one for the Court to resolve as a matter of law. *Carver v. Bonds*, 135 Cal. App.4th 328, 346 (2005). "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1990). The First Amendment protects against libel claims based on opinions that do not imply false statements of fact, or on loose, figurative or hyperbolic language, *Carver v. Bonds*, *supra*, and there is certainly a good deal of such language in the criticisms quoted in the complaint.[3/]

---

[3/]
The fact that plaintiffs also allege interference with contract as well as defamation does not allow plaintiff to avoid the burden of pleading and proving the elements of a defamation claim. *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988); *Blatty v. New York Times Co.*, 42 Cal.3d 1033 (1986).

-18-

Finally, a few of the comments enumerated in the complaint were posted more than one year before the complaint was filed on September 23, 2008.  The statute of limitations for defamation claims in California is one year, Section 340(c), Code of Civil Procedure, and even though those comments can still be viewed today, the single publication rule applies to Internet web sites.  *Oja v. Army Corps of Engineers*, 440 F.3d 1122 (9th Cir. 2006).  Thus the statements alleged in ¶¶ 17, 18, 19 and 24 of the complaint cannot properly the basis of a defamation claim, and the subpoena to identify those posters should be quashed.

### (4)  Require an Evidentiary Basis for the Claims

No person should be subjected to compulsory identification through a court's subpoena power unless the plaintiff produces sufficient evidence supporting each element of its cause of action to show that it has a realistic chance of winning a lawsuit against that defendant.  This requirement, which has been followed by every federal court and every state appellate court that has addressed the standard for identifying anonymous Internet speakers, *see* pages 10 to 14, *supra*, prevents a plaintiff from being able to identify his critics simply by filing a facially adequate complaint.  In this regard, plaintiffs often claim that they need to identify the defendants simply to proceed with their case.  However, relief is generally not awarded to a plaintiff unless and until the plaintiff comes forward with **evidence** in support of his claims, and the Court should recognize that identification of an otherwise anonymous speaker is a major form of **relief** in cases like this.  Requiring actual evidence to enforce a subpoena is particularly appropriate where the relief itself may undermine, and thus violate, the defendant's First Amendment right to speak anonymously.

Indeed, in a number of cases, plaintiffs have succeeded in identifying their critics and then sought no further relief from the court, but simply retaliated against the critic out of court.  *Swiger v. Allegheny Energy*, 2007 WL 442383 (E.D. Pa., Feb. 7, 2007), *aff'd* 540 F.3d 179 (3d Cir. 2008); Thompson, *On the Net, in the Dark,* California Law Week, Volume 1, No. 9, at 16, 18 (1999).   Some lawyers who bring cases like this one have

-19-

admitted that the mere identification of their clients' anonymous critics may be all that they desire to achieve through the lawsuit. *E.g.,* Werthammer, *RNN Sues Yahoo Over Negative Web Site,* Daily Freeman, November 21, 2000, www.zwire.com/site/news.cfm? newsid=1098427&BRD=1769&PAG =461& dept_id= 4969&rfi=8. One of the leading advocates of using discovery procedures to identify anonymous critics has urged corporate executives to use discovery first, and to decide whether to sue for libel only after the critics have been identified and contacted privately. Fischman, *Your Corporate Reputation Online*, www.fhdlaw.com/html/corporate_ reputation.htm; Fischman, *Protecting the Value of Your Goodwill from Online Assault*, www.fhdlaw.com/html/bruce_article.htm. Lawyers who represent plaintiffs in these cases have also urged companies to bring suit, even if they do not intend to pursue the action to a conclusion, because "[t]he mere filing of the John Doe action will probably slow the postings." Eisenhofer & Liebesman, *Caught by the Net*, 10 Business Law Today No. 1 (Sept./Oct. 2000), at 46. These lawyers have similarly suggested that clients decide whether it is worth pursuing a lawsuit only after finding out who the defendant is. *Id.* Even the pendency of a subpoena may have the effect of deterring other members of the public from discussing the plaintiff.

The unanimous approach of courts that have reached the question, requiring submission of **evidence** supporting a prima facie case before anonymous Internet speakers may be identified, is consonant with a more general proposition adopted in cases involving the disclosure of anonymous sources — a party seeking discovery of information protected by the First Amendment must show that there is reason to believe that the information sought will, in fact, help its case. *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 6-9 (2d Cir. 1982); *Richards of Rockford v. PGE*, 71 F.R.D. 388, 390-391 (N.D. Cal. 1976). In effect, the plaintiff should be required to meet the summary judgment standard of creating genuine issues of material fact on all issues in the case, including issues with respect to which it needs to identify the anonymous speakers, before it is given the opportunity to obtain their identities. *Cervantes v. Time*, 464 F.2d 986, 993-994 (8th Cir.

-20-

1972).  "Mere speculation and conjecture about the fruits of such examination will not suffice."  *Id.* at 994.

The Court's subject matter jurisdiction depends on plaintiffs' Lanham Act claims, which require a showing either of likelihood of confusion about source, or that false statements were made by **direct competitors** for the purpose of selling their own competing products.  The Ninth Circuit and many other courts hold that standing to bring a false advertising claim is accorded only to companies whose products compete with the product of the allegedly false advertiser.  *Jack Russell Terrier Network v. American Kennel Club,* 407 F.3d 1027, 1037 (9th Cir. 2005); *Stanfield v. Osborne Indus.*, 52 F.3d 867, 872 (10th Cir. 1995); *L.S. Heath & Son v. AT&T Info. Sys.*, 9 F.3d 561, 575 (7th Cir.1993).  But movant Doe is a current tenant, Levy Affidavit ¶ 7 and Exhibit E.  In order to proceed in federal court against any of the other Does, plaintiffs must provide at least some evidence showing she is anything other than a current or former tenant.  They must provide the Court with some reason even to believe that their critics are competitors, other than stating a convenient belief so that they can get into federal court to purse their defamation claims.  At a minimum, because movant has shown that she is a current tenant, there is no basis for exercise of federal jurisdiction to obtain discovery identifying her.[4/]

In order to proceed on their defamation claims, plaintiffs must prove "a false statement of fact made with malice that caused damage."  *Global Telemedia Int'l v. Doe 1*, 132 F. Supp.2d 1261, 1266 (C.D. Cal. 2001).   In this case, plaintiffs have yet to introduce **any** evidence that any statements by the Does are false, or that any of the statements caused plaintiff to suffer **any** damage.

---

[4/]    Dismissal for lack of subject matter jurisdiction is, of course, without prejudice to refiling in state court.  As to the other Does, even if plaintiffs currently lack evidence to support Lanham Act jurisdiction, they can always refile their libel claims in state court.  Of course, if plaintiffs have valid defamation claims against some of the Does, they will presumably succeed in meeting the California courts' test for identifying anonymous Internet speakers, *Krinsky v. Doe 6*, 159 Cal.App.4th 1154 (2008).  If they also find evidence that some of the Does are in fact agents of their rivals, and that the critical statements were "commercial advertising or promotion," they can dismiss in state court and refile against those defendants in federal court based on that evidence.

-21-

### (5)  Balance the Equities

Even if, in response to this memorandum, plaintiffs submit evidence sufficient to establish a prima facie case against each Doe defendant,

> the final factor to consider in balancing the need for confidentiality versus discovery is the strength of the movant's case . . ..  If the case is weak, then little purpose will be served by allowing such discovery, yet great harm will be done by revelation of privileged information. In fact, there is a danger in such a case that it was brought just to obtain the names . . .. On the other hand, if a case is strong and the information sought goes to the heart of it and is not available from other sources, then the balance may swing in favor of discovery if the harm from such discovery is not too severe.

*Missouri ex rel. Classic III v. Ely*, 954 S.W.2d 650, 659 (Mo.App. 1997). Just as the Missouri Court of Appeals approved such balancing in a reporter's source disclosure case, *Dendrite* called for such individualized balancing when the plaintiff seeks to compel identification of an anonymous Internet speaker:

> [A]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed.

> The application of these procedures and standards must be undertaken and analyzed on a case-by-case basis. The guiding principle is a result based on a meaningful analysis and a proper balancing of the equities and rights at issue.

*Dendrite,* 775 A.2d at 760-761.

*Accord Highfields Capital Mgmt. v. Doe*, 385 F. Supp.2d at 976; *Mobilisa v. Doe*, 170 P.3d at 720.

If the plaintiff cannot come forward with concrete evidence sufficient to prevail on all elements of his case on subjects that are based on information within his own control, there is no basis to breach the anonymity of the defendants.  *Bruno v. Stillman*, 633 F.2d 583, 597 (1st Cir. 1980); *Southwell v. Southern Poverty Law Center*, 949 F. Supp. 1303, 1311 (W.D. Mich. 1996).   Similarly, if the evidence that the plaintiff is seeking can be obtained without identifying anonymous speakers or sources, the plaintiff is required to exhaust these other means before seeking to identify anonymous persons.  *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 8-9 (2d Cir. 1982); *Zerilli v. Smith*, 656 F.2d 705, 714

-22-

(D.C. Cir. 1981) ("an alternative requiring the taking of as many as 60 depositions might be a reasonable prerequisite to compelled disclosure"). The requirement that there be sufficient evidence to prevail against the speaker, and sufficient showing of the exhaustion of alternate means of obtaining the plaintiff's goal, to overcome the defendant's interest in anonymity is part and parcel of the requirement that disclosure be "necessary" to the prosecution of the case, and that identification "goes to the heart" of the plaintiff's case. If the case can be dismissed on factual grounds that do not require identification of the anonymous speaker, it can scarcely be said that such identification is "necessary."

The adoption of a standard comparable to the test for grant or denial of a preliminary injunction, considering the likelihood of success and balancing the equities, is particularly appropriate because an order of disclosure is an injunction – and not even a preliminary one at that. A refusal to quash a subpoena for the name of an anonymous speaker causes irreparable injury, because once a speaker loses her anonymity, she can never get it back. Moreover, any violation of an individual speaker's First Amendment rights constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373-374 (1976). In some cases, identification of the Does may expose them to a significant danger of extra-judicial retaliation.

On the other side of the balance, the most important consideration is that denial of a motion to identify the defendant based on either lack of sufficient evidence or balancing the equities does not compel dismissal of the complaint. Plaintiffs can request discovery after submitting more evidence. Beyond that fact, the Court should plaintiffs interest in redressing the alleged violations. In this regard, the Court can consider not only the strength of plaintiffs' evidence but also the nature of the allegations and the likelihood of significant damage to the plaintiff. Here, no evidence has been presented supporting any heightened need to suppress the anonymous criticism of plaintiffs' buildings.

-23-

1

### III.   THE STATE-LAW COUNTS IN THE COMPLAINT SHOULD BE STRICKEN UNDER THE SLAPP STATUTE.

2       The court should not simply grant a protective order, but it should strike the state-

3   law claims under the California anti-SLAPP statute.   The Ninth Circuit has held that

4   California's anti-SLAPP statute applies to state claims brought in federal court.  *United*

5   *States v. Lockheed Missiles & Space Co.*, 171 F.3d 1208, 1218 (9th Cir.1999).

6       The complaint is within the scope of the SLAPP statute because it has been filed

7   over an act of defendant in furtherance of the right of petition, and/or the right of free

8   speech in connection with a public issue.  Code of Civil Procedure § 425.16(b)(1); *Braun*

9   *v. Chronicle Publishing Co.*, 52 Cal. App.4th 1036, 1042-43 (1997).  Plaintiffs' claims all

10  relate to "(3) written . . . statement[s] made in a place open to the public or a public forum

11  in connection with an issue of public interest; (4) or any other conduct in furtherance of

12  the exercise of the constitutional right of petition or the constitutional right of free speech

13  in connection with a public issue or an issue of public interest."   Code of Civl Procedure §

14  425.16(e).  As one court has noted, "The definition of 'public interest' within the meaning

15  of the anti-SLAPP statute has been broadly construed to include not only governmental

16  matters, but also private conduct that impacts a broad segment of society . . .." *Damon v.*

17  *Ocean Hills Journalism Club,* 85 Cal. App.4th 468, 479 (2000).   Among the matters that

18  have been judicially accepted as within the "public interest" are  statements and a letter

19  regarding a landlord-tenant dispute, *Dowling v. Zimmerman*, 85 Cal. App.4th 1400, 1420

20  (2001); communication to city officials and employees about a proposed development,

21  *Tuchscher Development Enterprises v. San Diego Unified Port District*, 106 Cal. App.4th

22  1219, 1234 (2003); views about the safety of dental amalgam, *Kids Against Pollution v.*

23  *California Dental Association,* 108 Cal. App.4th 1003, 1015(2003); and communications

24  about possible legislation concerning mail order contact lens sales.  *1-800-Contacts v.*

25  *Steinberg,* 107 Cal. App.4th 568, 583 (2003).

26      There is surely significant public interest in whether an apartment complex is well-

27  run in the ways discussed on the ApartmentRatings.com message board.  Accordingly,

28

-24-

defendants' statements on a public forum about the problems in plaintiffs' large apartment complexes are covered by subsections (e)(3) and (e)(4) of the anti-SLAPP law.

Once a defendant has made a prima facie showing that the lawsuit arises from petition or speech activity covered by section 425.16, as movant has done here, the burden shifts to plaintiffs to establish a probability of prevailing on their claims, which must be done by competent and admissible evidence. *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002); *Ludwig v. Superior Court,* 37 Cal. App.4th 8, 15-16, 21 n.16, 25 (1995). As discussed above, plaintiffs have not met that test; they have not even shown that the Court has subject-matter jurisdiction. Accordingly, their state-law claims should be stricken as a SLAPP.

## CONCLUSION

The court should grant a protective order quashing the subpoena to ApartmentRatings.com in its entirety. The state-law counts in the complaint should be stricken as a SLAPP, and the complaint dismissed for want of subject matter jurisdiction.

Respectfully submitted,


   /s/ Paul Alan Levy
Paul Alan Levy (DC Bar No. 946400)

Public Citizen Litigation Group
Email: plevy@citizen.org
1600 - 20th Street, N.W.
Washington, D.C. 20009
Telephone: 202/588-1000
Facsimile: 202/588-7795


   /s/ Ann Brick
Ann Brick (No. 65296)

American Civil Liberties Union
Foundation of Northern California,
Inc.
Email: abrick@aclunc.org
39 Drumm Street
San Francisco, California 94111
Telephone: 415/621-2493
Facsimile: 415/255-8437

November 19, 2008                    Attorneys for John Doe

-25-